## AMERICAN FIDELITY CO. v. PATTY.

*Accident insurance—Hazardous occupation clause—Isolated act not within, when—Liability not reduced, when.*    .            ,

A condition in an accident insurance policy stipulating that where the assured is injured while engaged in a more hazardous occupation or employment than that represented or written in the policy the amount of liability shall be reduced to that produced by the same premium upon the basis of the extra hazardous occupation or employment, does not apply or control where the injury results in the performance by the assured of an isolated act outside of, but incidental to, the represented occupation.

(Decided January 6, 1914.)

ERROR: Court of Appeals for Darke county.

ALLREAD, J.; FERNEDING and KUNKLE, JJ., concurring.

The original action was brought by the beneficiary, Maggie O. Patty, upon a policy of insurance issued to one W. O. Patty, insuring against loss of life from bodily injury caused by external, violent or accidental means. It is averred that the assured, while in the performance of the duties of his occupation, as set out in said policy, fell from a moving car and was fatally injured.

A number of defenses are set forth in the answer. These defenses, except the first, relate to a claim of the insurance company that Patty at the time of his injury was engaged in an extra hazardous occupation which, by virtue of the policy itself, reduced the amount recoverable to the sum of $300.

The case was tried before the court and a jury

and resulted in a verdict and judgment in favor of the plaintiff for $6,000, the full amount of the policy.

Motion for a new trial was overruled and the case was brought here upon petition in error.

The special defenses rest upon the following representation in the application and made a part of the policy, to-wit: "The duties of my occupation are as follows: secretary and manager, office duties and superintendent. No manual labor." And also upon the following condition in the policy: "If the insured is injured fatally or non-fatally while engaged in an occupation or employment, classed by the company as more hazardous than that written in the application for this policy, the company's liability shall be only for such amount as the premium paid by him will produce at the rate fixed for such increased hazard in the manual of the company."

The evidence shows that W. O. Patty, the assured, was a member of a partnership engaged in mining, washing and shipping gravel, and in an emergency and as an isolated act, he boarded a small dump-car for the purpose of braking it as it descended to the hopper, and while so engaged fell and was injured. The evidence as to these facts is not conflicting.

The controversy is largely if not wholly a question of law.

Counsel for the insurance company contend that the company is not liable for the full amount of the policy, but only for the amount provided for in the exception for the extra hazardous occupation.

Counsel for the plaintiff below contends that the company is liable for the injury although it grew out of an isolated act involving a more hazardous occupation. The controversy must be determined from the language employed in respect to the occupation and in connection with the general scope and purpose of the insurance contract.

The representations of the assured as to the duties of his occupation were undoubtedly material and a controlling element in the contract of insurance. The condition above recited should be construed as an exception. It was undoubtedly the main purpose of both parties to the insurance contract to stipulate for the full amount of insurance in case of accidental death and that the reduced amount should apply only in the cases specified in the exception.

In reading and construing the so-called exception we are justified in following the principle announced by Spear, J., in the case of *U. S. Mutual Accident Assn.* v. *Hubbell*, 56 Ohio St., 516, as follows: "But it must be borne in mind that language of exceptions in such policies, limiting the liability of the company, are to be construed favorably to the insured, and doubts and ambiguities resolved against the insurer."

The representation of the assured's occupation should not be construed as an absolute guarantee by the assured that "no manual labor" would be performed. In the very nature of occupational insurance such a construction would limit the scope of the policy to a very narrow range. This representation is merely descriptive of the occupation

and should be construed with the condition above quoted containing the stipulation controlling the liability and reducing the amount. The exception is based upon occupation rather than a single act.

This is an important distinction to be kept in mind in reviewing and harmonizing the decisions upon this subject.

The exception under consideration is limited to cases where the insured is injured "while engaged in the occupation or employment classed by the company as more hazardous than that written in the application for this policy." To reduce the company's liability to the smaller sum the insurance company contends that it is graduated by the hazard and fixed by the classification as applied to the occupation of an ordinary brakeman.

A single act does not determine an occupation. Occupations often overlap and a person clearly within a certain occupation is sometimes called upon in an emergency to perform an act naturally appertaining to a different occupation. Yet in common parlance the person exercising the isolated act does not change his occupation. The application in the case under consideration notified the insurance company that W. O. Patty was a member of the firm operating this plant and that in addition to office duties he was superintendent of the plant. It would be reasonable to assume that while his occupation did not call for manual labor, yet more or less manual labor in connection with the management of the plant would be expected of him as its superintendent in cases of emergency.

In the case of *The Union Mutual Accident Assn.* v. *Frohard,* 134 Ill., 228, this definition is found on page 234: "The word 'occupation,' as found in these by-laws, must be held to have reference to the vocation, profession, trade or calling which the assured is engaged in for hire or for profit, and not as precluding him from the performance of acts and duties which are simply incidents connected with the daily life of men in any or all occupations, or from engaging in mere acts of exercise, diversion or recreation."

In *Hess* v. *Preferred Masonic Mutual Accident Assn. of America,* 112 Mich., 196, it is held: "A provision in an accident policy that it shall be void as to all accidents occurring to the insured when 'engaged in any profession, employment, or exposure' not rated as preferred does not apply to the casual performance of an act pertaining to an accepted risk, if in the particular case it pertains incidentally to the regular employment of the insured."

Niblack on Benefit Societies and Accident Insurance (2 ed.), section 409, holds: "A change of occupation means 'an engaging in another employment as a usual business.' It does not apply to temporary employments during leisure hours, to acts done outside of one's usual and ordinary business, or to casual employment in a different business."

We find the same principle maintained by the following cases, cited by counsel for plaintiff below: *Admrs. of Stone* v. *The U. S. Casualty Co.,* 34 N. J. Law, 371; *North Am. Life & Accident*

*Ins. Co. v. Burroughs,* 69 Pa. St., 43; *Tucker*
v. *Mutual Ben. Life Co.,* 50 Hun, 50; *Berliner* v.
*Travelers' Ins. Co.,* 121 Cal., 451; *Standard Life
& Accident Ins. Co.* v. *Fraser,* 76 Fed. Rep., 705;
*Brink* v. *Guaranty Mutual Accident Assn.,* 55 Hun,
606; *Johnson* v. *London Guarantee & Accident Co.,*
115 Mich., 86; *Kentucky Life & Accident Ins. Co.*
v. *Franklin,* 102 Ky., 512; *Wildey Casualty Co.* v.
*Sheppard,* 61 Kans., 351; *Schmidt* v. *American
Mutual Accident Assn.,* 96 Wis., 304; *Holliday* v.
*American Mutual Accident Assn.,* 103 Iowa, 178;
*Hoffman* v. *Standard Life & Accident Co.,* 127
N. C., 337.

The cases chiefly relied upon by counsel for
plaintiff in error are founded upon exceptions
which relate not merely to the occupation but to the
particular act or hazard from which the injury
resulted.

Counsel for plaintiff in error especially rely upon
the unreported case of *Gotfredson* v. *The German
Commercial Accident Co.,* tried before Judge Angel
of the United States district court of Michigan in
1912, wherein there was an instructed verdict for
the insurance company upon the basis of an ex-
tra hazardous risk.

The application contained the following state-
ment: "My occupation and duties are fully de-
scribed as follows: Proprietor; no manual labor."

The exception clause of the policy was as fol-
lows: "If, the assured is injured after having
changed his occupation for one classified by the
company as more dangerous than that herein
stated or is injured while doing any act or thing

pertaining to any more hazardous occupation, the liability for any loss specified shall be such an amount as the premium paid by him will purchase at the rate fixed by this company for such more hazardous occupation."

An examination of this exception clause discloses that it is based not only upon a change of occupation, but also upon the "doing any act or thing pertaining to any more hazardous occupation."

The distinction between that case and the one at bar, wherein the exception is based upon occupation and not upon specific acts, is therefore apparent. We have examined the following cases cited by counsel for plaintiff in error: *Lane* v. *General Accident Ins. Co.,* 113 S. W. Rep., 324; *Doody* v. *National Masonic Accident Assn.,* 66 Nebr., 493, 92 N. W. Rep., 613; *Eggenberger* v. *Guarantee Mutual Accident Assn.,* 41 Fed. Rep., 172; *Metropolitan Accident Assn.* v. *Hilton,* 61 Ill. App., 100; *Railway Officials & Employes' Accident Assn.* v. *Bradley,* 97 Ill. App., 355; *Loesch* v. *Union Casualty & Surety Co.,* 176 Mo., 654.

These cases have a stipulation or exception very similar to the one involved in the Gotfredson case.

We have examined the other citations made by counsel for plaintiff in error and find that most, if not all of them, are cases where there was an actual change of occupation and not involving isolated acts. See *Standard Life & Accident Ins. Co.* v. *Carroll,* 86 Fed. Rep., 567; *Employers' Liability Assur. Corp.* v. *Back,* 102 Fed. Rep., 229; *Aldrich* v. *Mercantile Mutual Accident Assn.,* 149 Mass., 457.

In *Thomas* v. *The Masons' Fraternal Accident Assn. of America,* 64 App. Div. (N. Y.), 22, the exception related to injury in any occupation, temporary or otherwise, involving extra hazard as classified. The exception was held to apply to the case of a lawyer injured while engaged in hunting.

In *Estabrooks' Admrs.* v. *Union Casualty & Surety Co.,* 74 Vt., 473, 52 Atl. Rep., 1048, the assured, classified as "proprietor of grist mill, supervision only," was injured while using a hay rake upon his father's farm; held, liability reduced to basis of more hazardous occupation, but distinguishing the case upon the ground that the assured's temporary occupation was not incidental to that represented in the policy.

In *Knapp* v. *The Preferred Mutual Accident Assn.,* 53 Hun, 84, the operation of the buzz saw, which occasioned the injury, was not a mere isolated or emergency act, but more or less a feature of the assured's occupation.

So far as we have been able to ascertain there are no cases, except the Thomas and Estabrook cases, where it is held that an isolated act involving a more hazardous occupation reduced the amount of the policy to the basis of the extra hazardous risk in the absence of an exception based upon specific acts.

We, therefore, hold that the engaging by the assured in an isolated act outside of his represented occupational duties, but incidental thereto, does not violate his policy nor reduce the company's liability to the basis of a more hazardous occupation.

It follows that the trial court correctly instructed

the jury as to the basis of liability and that the evidence justified recovery of the full amount of the policy.

There is an objection to the charge of the court as to the burden of proof. We are of opinion that this charge is in harmony with the opinion of Judge Spear in the Hubbell case, above cited. Still, if the charge as to the burden of proof is erroneous, we would be required to ignore it under Section 11364, General Code, and sustain the verdict and judgment because in harmony with the substantial justice of the case.

We are greatly indebted to counsel for the able representation of the questions presented by the record and the thorough research and review of the many authorities bearing upon the law of the case.

The judgment of the court of common pleas will be affirmed.

*Judgment affirmed.*

*Messrs. Dale & Kusworm*, for plaintiff in error.
*Messrs. Bickel & Baker*, for defendant in error.

## BAKER *v.* BAKER.

*Divorce and alimony—Gross sum preferable form, when—Section 11991, General Code—Wife's inchoate right of dower.*

In fixing alimony, in cases where there are no children and the probabilities are that the lives of the parties will diverge, the preferable form of permanent alimony is a lump sum, having in mind the fact that the wife can not be divested of her inchoate right of dower in the real estate owned by her husband during the coverture.

(Decided January 10, 1914.)

APPEAL: Court of Appeals for Hamilton county.

BY THE COURT. Under the rule laid down in *Cox* v. *Cox,* 19 Ohio St., 502, on an appeal from a decree for alimony to this court all the issues of fact upon which the rights of the parties depend with respect to alimony are reopened for trial, notwithstanding a divorce was granted in the court below. This divorce is unaffected by the appeal, and this court has no power to review or disturb that part of the decree which relates to the divorce, although the correctness of the decree made by the lower court may well be doubted from a review of the evidence before us. That decree is now a finality and so fixes the status of the parties as they now appear before us that it becomes an element of consideration in determining the question of alimony.

The court has carefully considered all of the evidence submitted to us, which comprises all of the evidence taken in the court below and some further evidence submitted in relation to the property of

the respective parties. After full consideration the conclusion is reached that plaintiff is entitled to a judgment against defendant for permanent alimony in the sum of $7,500, this sum to be made payable, without interest, in installments extending over a period not to exceed four years—the time and amount of such installments to be agreed upon by the parties before the entry of decree, and upon failure of such agreement to be fixed by the court.

In a case of this kind, there being no children, and the probabilities being that the lives of the parties will hereafter diverge, we see no reason for making an allowance of alimony in the form of a continuing order payable in monthly installments, and believe that the payment of a fixed amount within a short time is more in compliance with the provisions of law and will better serve the welfare of both parties. And in fixing the amount named we have in mind that under the provisions of Section 11991, General Code, as construed by the supreme court in *DeWitt* v. *DeWitt,* 67 Ohio St., 340, the court is without power in this case to divest the wife of her inchoate dower in the real estate owned by the husband during the coverture. A counsel fee of $500 was allowed plaintiff in the court below, and if this amount has not been paid by the defendant, the decree in this court should provide for its payment.

*Judgment for plaintiff.*


*Messrs. Harmon, Colston, Goldsmith & Hoadly,* for plaintiff.

*Mr. John C. Healy,* for defendant.