IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## EASTERN DIVISION.

## KNOXVILLE, SEPTEMBER TERM, 1914.

SOUTHERN INSURANCE COMPANY *v.* ANDERSON.

## (*Knoxville.* September Term, 1914.)

1. **INSURANCE. Accident Insurance. Forfeit.**
Where the foreman of a bridge construction crew occassionally did some diving in connection with the work, without receiving any extra compensation therefor, there was no change of occupation, within the meaning of an accident insurance policy prohibiting a change to a more hazardous occupation. (*Post,. pp.* 485-489.)

Cases cited and approved: Ins. Co. v. McNevin, 32 Can. S. C.,. 194; Acc. Ass'n v. Kelsey, 46 Ill. App., 371; Stone v. Casualty Co., 34 N. J. Law, 371; Hoffman v. Standard Life Co., 127 N. C., 337; Life & Acc. Ins. Co. v. Burroughs, 69 Pa., 43; Hess v. Acc. Ass'n, 112 Mich., 196; Taylor v. Ill. Commercial Men Ass'n, 24 L. R. A., 1174.

Cases cited and distinguished: Stevens v. Modern Woodmen of America, 127 Wis., 606; Holiday v. Accident Association, 103. Iowa, 178; Accident Association v. Frohard, 134 Ill., 228.

130 Tenn.] (482)

Insurance Co. v. Anderson.

2. **APPEAL AND ERROR.** Exhibitions. Filing.

An accident insurance policy, application and proof of death, which were not copied in the bill of exceptions but were directed to be sent up, cannot be considered a part of the bill of exceptions, where they were not shown to have been filed in the court below. (*Post, pp.* 489, 490.)

Case cited and approved: Dunn v. State, 127 Tenn., 267.

FROM HAMILTON.

Appeal from the Circuit Court of Hamilton County to the Court of Civil Appeals, and by writ of *certiorari* to the Court of Civil Appeals from the Supreme Court. —NATHAN L. BACHMAN, Judge.

W. K. McALISTER and COOKE & NOLL, for plaintiff.

J. H. McLEAN, for defendant.

MR. JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by Mary Anderson, widow of Ernest Anderson, to recover from the Southern Insurance Company the sum of $500, in which amount the said company had insured the life of deceased against death resulting from bodily injuries, exclusive of any other cause. There was a judgment in favor of plaintiff below for $500, with interest, which judgment was affirmed by the court of civil appeals, and the case brought before us by *certiorari*.

The deceased was a foreman in charge of a gang of men engaged in the construction of a lock and dam

in the Tennessee river at Guild, Tenn. He put on a diving suit and went down in the water to inspect a cofferdam. . While under the water, his helmet came off, and he received some sort of blow on the head, probably from the helmet; his scalp being bruised and cut. He was taken out of the water in an unconscious condition, revived, and carried to a hospital. As a result of this accident, he developed acute pneumonia, from which he died within three days.

In the application for this policy, the deceased represented that his occupation was "foreman," and that his duties in said occupation were "supervising only," and that the business about which he was employed was "constructing a lock and dam."

The principal defense interposed by the company is that Anderson misrepresented the character of his employment and the nature of his duties, and thereby induced the insurance company to issue this policy, and that he was pursuing another occupation at the time of the accident. The proof shows that the rate of insurance for divers is a special rate, higher than the rate on a foreman, such as deceased was supposed to be; and that in some companies insurance on a man engaged in diving is a prohibited risk.

The substance of the evidence in this case is: That Anderson was employed by the contractors constructing this lock and dam as a foreman. The greater part of his work, of course, was done on the land. That about four months prior to his death he began to do some diving in connection with the work, inspecting a

cofferdam. That he probably averaged diving only five or six times during a month, or, as the walking boss, a witness for the company testifies, Anderson "occasionally" did diving work. It does not appear that Anderson received any extra pay for the diving he did.

On the foregoing testimony, the insurance company moved for a directed verdict. This motion was overruled, and it is upon the action of the court in submitting the case to the jury that the principal debate has been waged in the court of civil appeals and in this court.

We think that the trial judge was correct in overruling the motion of the insurance company for peremptory instructions in its favor.

The rule is that, where one casually or incidentally engages in activities other than those immediately connected with his regular employment, such a temporary change of his ordinary pursuits is not a change of occupation, within the prohibition of insurance policies. While there are provisions in the policy sued on against a change in occupation to one more hazardous, such provisions will not be held to apply to a case like this.

In a recent case from Wisconsin, the insured was employed in a restaurant where a barroom was also operated. His usual duties were those of a waiter, but occasionally, at the request of his employer, he would serve drinks at the bar. It was provided in his policy, and by the rules of the order in which he was insured,

that any member taking up the occupation of a saloon bartender should forfeit his certificate of insurance. Upon the death of the insured, it was urged that he had acted as a bartender, and his policy had accordingly become void. This contention was overruled, and the supreme court of Wisconsin said:

"The evidence establishes the fact that Mr. Miner did not employ the deceased as a bartender, nor did he pay him any compensation for such services. The extent of the services performed by the deceased in this respect is that, when he was engaged in his employment in the restaurant and saloon, he waited upon customers as an accommodation to his employer at occasional instances. These occasional acts of performing the duties of a saloon bartender and selling liquor to be used as a beverage can not be treated as being an employment in the prohibition occurring under the defendant's code of laws. Engaging in the employment or occupation prohibited by the conditions of the contract must be held to have reference to the vocation or calling to which an insured devotes himself with some degree of permanency for hire or profit, and it does not refer to acts which are simply incidentally connected with a regular employment." *Stevens v. Modern Woodmen of America,* 127 Wis., 606, 107 N. W., 8, 7 Ann. Cas., 566.

Construing a provision with reference to change of occupation, the supreme court of Iowa said:

"If a minister, must the accident occur while doing the distinguishing duties of a minister; or, if a lawyer,

while doing his professional work; or, if an artist, while doing the work of an artist—with perhaps, in each case, the essential duties of home, of society, and of citizenship? Or does the association intend, and should such a person understand, that the classification is based on the decreased risk because of the effect of such callings lessening the hazard, in view of the usual experiences of such men, not professionally, but as a whole? It seems to us that reason and authority sustain the latter rule." *Holiday* v. *American Mut. Acc. Assoc.,* 103 Iowa, 178, 72 N. W., 448, 64 Am. St. Rep. 170.

The supreme court of Illinois, speaking of such provisions, said:

"It would be unreasonable and absurd to hold that the merchant, who at that time measured a few bushels of grain, at another hung a few rolls of wall paper upon his own premises, at another drove a team of horses in a carriage or wagon, and at still another rowed a skiff for exercise or recreation, became, within the true intent and meaning of these by-laws, at the several times, a grain measurer, a paper hanger, a teamster, and a boatman, respectively. The word 'occupation,' as found in these by-laws, must be held to have reference to the vocation, profession, trade, or calling which the assured is engaged in for hire, or for profit, and not as precluding him from the performance of acts and duties which are simply incidents connected with the daily life of men in any or all occupations, or from engaging in mere acts of exercise, diversion,

or recreation." *Union Mut. Acc. Ass'n* v. *Frohard,* 134 Ill., 228, 25 N. E., 642, 10 L. R. A., 383, 23 Am. St. Rep., 664.

In the cases below, it was held that a temporary following of other pursuits did not change the occupation, within the meaning of such clauses in policies of accident insurance:

Where a baggageman was coupling cars. *Canadian Acc. Ins. Co.* v. *McNevin,* 32 Can. S. C., 194.

Where an agricultural superintendent was acting as superintendent of police at a state fair, without compensation other than expenses. *Travelers' Preferred Acc. Ass'n* v. *Kelsey,* 46 Ill. App., 371.

Where a teacher out of employment was building two houses for his own use. *Stone* v. *U. S. Casualty Co.,* 35 N. J. Law, 371.

Where a freight flagman, not employed to couple or switch, was placing an extra coupling pin between cars to take up slack. *Hoffman* v. *Standard Life Co.,* 127 N. C., 337, 37 N. E., 466.

Where an earthenware manufacturer was hauling and unloading hay. *North American Life & Acc. Ins. Co.* v. *Burroughs,* 69 Pa., 43, 8 Am. Rep., 212.

Where a bank cashier was using a buzz saw for his own purposes. *Hess* v. *Preferred Masonic Mut. Acc. Ass'n,* 112 Mich., 196, 70 N. W., 460, 40 L. R. A., 444.

Other cases illustrating the rule announced may be found collected in a note to *Stevens* v. *Modern Woodmen of America,* as reported in 7 Ann. Cas., 566, and

in a note to *Taylor* v. *Ill. Commercial Men Ass'n*, as reported in 24 L. R. A. (N. S.), 1174.

Applying the rule announced to the present case, it is obvious that the trial judge properly declined to direct a verdict. There was much evidence to indicate that the diving done by deceased was casual and incidental. He had not changed his employment, nor had he made any fraudulent misrepresentation as to his vocation or employment. He was not engaged in diving as an occupation, but the diving he did, according to the testimony of witnesses for the company, was occasional only.

Other questions presented by the insurance company have been considered by the court of appeals and have been disposed of by this court orally.

It might be proper to add that the plaintiff in error is really not in a position to make any of the points it has urged in this court. Practically all its defenses are based on provisions of the policy, the application, and the proof of death. None of these instruments are copied in the bill of exceptions. The bill of exceptions directs that these papers and others, referring to them as Exhibits A, B, C, etc., be sent up. On looking to the documents sent up, we find none of them identified by the trial judge. True they are referred to in the bill of exceptions as Exhibits A, B, and C, etc., but none of them appear to have been filed in the court below. So if they could otherwise be treated as a part of the bill of exceptions, with such doubtful identification by the trial judge, still, never having been filed

in the court below, they cannot be looked to here.  A bill of exceptions must, within the statutory time, be both authenticated and filed, and we cannot consider anything in this court that is not shown to have been a part of the record below.  *Dunn* v. *State,* 127 Tenn., 267, 154 S. W., 969, and cases cited.

The judgment will be affirmed.